# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| PHILLIP A. LUCKETT,<br>      Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of the Social Security<br>Administration,<br>      Defendant. | )<br>)<br>)<br>) Case No. 2:12-CV-145 JD<br>)<br>)<br>)<br>)<br>) |

## **OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff, Phillip A. Luckett, on April 16, 2012, and Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 19], filed by Plaintiff on September 14, 2012. Luckett requests that the October 20, 2011 decision of the Administrative Law Judge to deny him disability insurance benefits be reversed or, alternatively, remanded for further proceedings. The Court ultimately grants the relief requested to the extent that the case is remanded for clarification.

## **PROCEDURAL BACKGROUND**

Luckett filed an application seeking Disability Insurance Benefits and Supplemental Security Income, alleging a disability onset date of November 5, 2005. Luckett's claims were denied initially on June 18, 2007, and upon reconsideration on October 1, 2007. Thereafter, Luckett filed a written request for a hearing. A video hearing was held on August 14, 2009, before Administrative Law Judge ("ALJ") Mona Ahmed. Following ALJ Ahmed's unfavorable decision on December 1, 2009, Luckett's requested review was granted on February, 24 2011. The case was remanded to ALJ Roxanne Kelsey, who held the hearing on September 13, 2011. At the second hearing, Luckett, his

1

attorney, medical expert ("ME") Dr. Arthur Lorber, and vocational expert ("VE") Pamela Tucker appeared. ALJ Kelsey's October 5, 2011 decision was also unfavorable, spurring Luckett on October 12, 2011 to request the case to be reopened to include additional evidence. ALJ Kelsey did so, submitting an amended decision on October 20, 2011,

In the October 20, 2011 amended decision, which denied Luckett's application, ALJ Kelsey made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.

2. The claimant has not engaged in substantial gainful activity since November 5, 2005, the alleged onset date (20 CFR 404.1571 *et seq.*, and 20 CFR 416.971 *et seq.*).

3. The claimant has the following severe impairments: left shoulder recurrent dislocations; right shoulder degenerative joint disease; status post gunshot wound to lower left extremity; diabetes; back impairment and hip arthritis/bursitis (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR. Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can only sit or stand/walk for one hour at a time, after which he should be permitted to move around for a couple of minutes, and then sit or stand/walk for another hour. He can never climb ladders or scaffolds; can frequently climb stairs and ramps; can occasionally balance, stoop, crouch or kneel; can never crawl; can occasionally operate foot pedals; can never perform overhead reaching with his left upper extremity; and can frequently use his left shoulder for pushing and pulling. He can never be exposed to unprotected heights or concentrated vibrations.

6. The claimant is unable to perform any past relevant work. (20 CFR 404.1565 and 416.965).

7. The claimant was born on December 31, 1989 and was 45 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age. (20 CFR 404.1563 and 416.963).

8. The claimant has limited education and is able to communicate in English. (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform. (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from November 5, 2005, through the date of this decision. (20 CFR 404 1520(g) and 416.920(g)).

R. 17-24.

Luckett once again filed for review, which was denied by the Appeals Council on February 17, 2012, leading him to file the April 16, 2012 Complaint.

## FACTS

A. <u>Background</u>

Luckett was born in 1959 and was 51 years old on the date of the hearing. R. at 23. He has a limited education, finishing only tenth grade. R. at 327. Luckett's past relevant work was as an industrial truck operator. R. at 328. His job required him to lift heavy objects (from forty-five to sixty pounds) and to walk, stand, climb, and stoop for eight hours a day, five days a week. *Id.*

B. <u>Medical Evidence</u>

In 1982, Luckett fractured his femoral shaft in a car accident and had surgery to correct it. R. at 83. Also in the early 1980s, he accidently discharged a gun, lodging a bullet in his left hip, but not breaking the bone. In 2007, he was diagnosed with an antalgic gait, with favoring the left lower extremity. R. at 417.

3

He dislocated his left shoulder in early 2005 and again in late 2006, for which he received physical therapy. R. at 414. No surgery was recommended, although Luckett experienced soreness and problems with moving it ever since the dislocation. *Id.* He also has problems with his right shoulder, specifically arthritis and degenerative joint disease, causing him pain when moving the shoulder. *Id.* He received two steroid shots to the left shoulder in April of 2009, which caused improvement. R. at 467.

In May 2011, Luckett reported persistent left hip problems to a Dr. Magill, an orthopedic surgeon. R. at 722. X-rays of the hip demonstrated some calcification, which according to Dr. Magill suggested previous trauma to the region. *Id.* He also diagnosed Luckett with moderate hip arthritis with narrowing, as well as trochanteric bursitis. R at 723. Luckett saw Dr. Magill after the September 2011 video hearing with ALJ Kelsey, where the doctor reconfirmed his earlier X-ray diagnostic, namely, left hip arthritis and bursitis. R. at 743. Dr. Magill opined that it is unreasonable to expect for Luckett to stand for more than six hours in a work day given his pathology. *Id.* Finally, he also hinted that hip replacement surgery might be a possibility. *Id.*

C. <u>Luckett's Testimony</u>

Luckett testified that he stopped working after he injured his shoulder in early 2005, and that at the time of the hearing his left hip was the main health problem rendering him unable to work. R. at 47. He characterized the pain in his left hip as severe. *Id.* He does not drive, exercise, launder clothes, or cook. R. at 49, 52. When asked if he watches TV he responded affirmatively, but testified that he gets distracted due to stress. R. at 53. Both left and right arms experience pain, with the pain lasting upwards to a week and being exacerbated if he moves his arms the wrong way. R. at 55. He said he is able to lift and carry only about five to ten pounds. *Id.*

4

When ALJ Kelsey inquired about his ambulation, he testified that he is only able to stand or walk for ten or fifteen minutes. R. at 56. He is able to sit for only twenty minutes before he has to get up and walk around, in an attempt to shake off any pain. *Id.* He does not have any problems with buttoning his jacket, pushing the buttons on a phone, or forgetting either to take his medication or attend scheduled doctor appointments. R. at 56-57. He testified that he has not had any problems with drugs or alcohol in the past six years. R. at 57.

Luckett also testified about stomach cramps, problems with his kidneys, and being diagnosed as a borderline diabetic. R. at 58-59. He confirmed the pain he suffers in his lower back, which travels from his left hip down to his left knee. R. at 60. He testified that doctors told him that the pain was due to the arthritis caused by the car accident he was involved in more than thirty years ago. *Id.* Due to the pain he suffers, he said he is not able to stand six hours out of an eight hour workday. He testified that he uses a cane, which was prescribed to him by Dr. Chan. R. at 61. Later, in his conversation with Dr. Lorber, Luckett said that he had been using the cane for more than two years. R. at 73.

D. <u>Medical Expert Testimony</u>

Prior to giving his expert opinion, Dr. Lorber inquired about the injuries to Luckett's left hip–the car accident and the accidental gun discharge–and if he had a history of alcoholism. The latter inquiry was answered in the negative by Luckett.[1] R. at 70-72. Dr. Lorber also asked if Luckett entered the hearing room with the assistance of a cane or any like device. R. at 72. ALJ Kelsey confirmed that he indeed had, specifically, a single prong cane with a rubber tip on the end. *Id.*

---

[1] Later, in the back-and-forth between Luckett, Dr. Lorber, and ALJ Kelsey, Luckett testified that he had stopped drinking after he was prescribed liver medication, which was over a year prior to the date of the hearing.

In assessing Luckett's shoulder ailments, Dr. Lorber concluded that even though they could be categorized as severe impairments for residual functional capacity ("RFC") purposes, the ailments did not rise to the level necessary to meet the disability standard. R. at 82. After summarizing the injuries Luckett sustained to his left hip, Dr. Lorber concluded that "[t]here was no evidence of actual pathology involving the hip joint itself, as I recall." R. at 84. He also concluded that the use of the cane Luckett had entered the hearing room with was not required due to any intrinsic hip pathology. *Id.* Dr. Lorber assessed the polyneuropathy which was discovered from an EMG performed on Luckett's lower extremity. *Id.* The doctor concluded that the polyneuropathy "may result from alcohol use," even though Luckett testified that he did not drink. *Id.* He went on to say that "alcohol is not the cause of polyneuropathy" since it was not entirely clear whether the EMG findings "were a result of radiculopathy or a mocked alcoholic polyneuropathy." R. at 85. When asked by Luckett's attorney about the limited range of motion experienced by the claimant in his left hip, Dr. Lorber testified that "range of motion of any joint [is] [t]otally under the control of the patient." R. at 95.

Dr. Lorber's conclusions regarding Luckett's functional limitations included: (1) no overhead work with the left upper extremity; (2) limited ability to lift and carry objects; (3) limited ability to stand and walk for prolonged periods of time; (4) warned against climbing ladders or scaffolding, as well as working in unprotected heights or areas with concentrated vibration; and (5) occasional bending, stooping, crouching, and kneeling, but no crawling. R. at 90-91. Given these limitations, the vocational expert testified that there were jobs in the regional and national economy available to Luckett. R. at 108, 110.

6

## STANDARD OF REVIEW

Decisions of the Commissioner of Social Security are judicially reviewable pursuant to 42 U.S.C. § 405(g), which instructs the court to accept the Commissioner's factual findings as conclusive, so long as they are substantially supported by the record. Thus, the Commissioner's final decision is reversible if it is not supported by substantial evidence or if the improper legal criteria is used. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

When reviewing the record, this court may not re-weigh the evidence or substitute its judgment for that of the ALJ. *Lopez ex rel. Lopez v. Barnhart,* 336 F.3d 535, 539 (7th Cir. 2003). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ's findings are supported by substantial evidence and under the correct legal standard. *See Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000).

An ALJ must articulate, at least minimally, her analysis of the evidence so that this court can follow her reasoning, thus assuring that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir.

2001). The ALJ must build an "accurate and logical bridge from the evidence to his conclusion so that, as a reviewing court, we may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004) (quoting *Scott*, 297 F.3d at 595); *see also Hickman v. Apfel*, 187 F.3d 683, 689 (7th Cir. 1999) (citing *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)).

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent her from doing her previous work, but considering her age, education, and work experience, it must also prevent her from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. § 404.1520(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or

8

equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's residual functional capacity, age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(I)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. "The RFC is an assessment of what work-related activities the claimant can perform despite [his] limitations." *Young*, 362 F.3d at 1000. The ALJ must assess the RFC based on all the relevant evidence of record. *Id.* at 1001 (citing 20 C.F.R. § 404.1545(a)(1)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Id.* at 1000; *see also Zurawski*, 245 F.3d at 886; *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## DISCUSSION

Luckett seeks reversal and remand of the ALJ's decision for the following reasons: (1) the ALJ erred in failing to send post-hearing medical evidence to Dr. Lorber, the ME, before issuing the amended unfavorable decision; (2) the ALJ improperly evaluated Luckett's Residual Functional Capacity according to SSR 96-8p; and (3) the ALJ erred in evaluating Luckett's credibility under SSR 96-7p.

A. <u>Exhibit 14F and its Effect on the Amended Opinion</u>

Luckett first argues that ALJ Kelsey committed a critical error by not consulting the ME, Dr. Lorber, after reopening the case for the introduction of a "new" medical exhibit and before issuing

9

her amended opinion. By failing to submit the allegedly new evidence to the ME, Luckett argues, the ALJ "improperly assumed the role of doctor." Luckett further argues that ALJ Kelsey failed to sufficiently explain her rationale in reissuing an unfavorable decision; specifically, that ALJ Kelsey failed to build a logical bridge between the new exhibit and her unfavorable opinion. The Commissioner responds that ALJ Kelsey's decision to not seek the ME's further opinion was reasonable, since the contents of the allegedly new Exhibit 14F "would not have been new to Dr. Lorber." The Commissioner argues that since Exhibit 14F contained diagnoses and x-ray findings to which Dr. Lorber already had access, it was reasonable for ALJ Kelsey to conclude that the post-hearing exhibit allowed her original findings to stand.

The rule is that if additional evidence is received which "in the opinion of the administrative law judge . . . may change the State agency or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments," then the ALJ must obtain an updated medical opinion from the ME. SSR 96-6P at 3–4. With respect to the issue of obtaining an updated medical expert opinion, the Commissioner's brief is correct; the evidence in Exhibit 14F was *not* new. Luckett's hip arthritis and bursitis are addressed throughout Exhibits 10F, 11F, and 12F. R. at 561, 593, 598, 605, 701, 716, 722, 723. All of those were available to Dr. Lorber when he performed his assessment.

That said, Dr. Lorber apparently was not aware of any such evidence. He opined that "[t]here was no evidence of actual pathology involving the hip joint itself, *as I recall*." R. at 84 (emphasis added). ALJ Kelsey's initial decision essentially adopted Dr. Lorber's opinion, affording it great weight and finding no evidence of severe hip impairments. R. at 31, 36. The RFC, in turn, was based in large part on that finding of fact. Although the parties did not focus on the issue, that might be

10

independently problematic. *See Foust v. Astrue*, No. 4:08-CV-11, 2009 WL 1854526 at *6 (N.D.Ind. June 26, 2009) (explaining that where a medical expert's assessment is incorrect, the critical question is the extent to which the ALJ relied on that incorrect opinion in reaching her conclusions); *Frederick v. Astrue*, No. 1:07-CV-836, 2009 WL 530057 at *4 (S.D.Ohio Feb. 27, 2009) (ALJ's RFC determination cannot be complete if it is based on an incomplete medical assessment); *but see Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000) (upholding the ALJ's opinion even though the medical expert's testimony "raises some cause for concern" because "there is no indication in this record that the ALJ accepted or relied upon the objectionable portions of the medical expert's testimony."); *Hamilton v. Astrue*, 2008 WL 2705171 at *9 (S.D.Ind. June 28, 2008) (upholding the ALJ's treatment of the medical expert's opinion because (1) "[t]he ALJ's analysis did not rely upon [the medical expert's] possible misstatement;" (2) "[t]he ALJ's further discussion of the disease was based upon the medical opinion of several physicians;" and (3) "[i]t contained no errors of law" on the issue).

More to the point, however, the way in which ALJ Kelsey handled the introduction of Exhibit 14F created a logical inconsistency in the amended opinion. In the original opinion ALJ Kelsey found no evidence of severe hip impairments; but in the updated opinion, ALJ Kelsey acknowledged Dr. Magill's assessment of "persistent left hip trochanteric bursitis and arthritis" and afforded it "some" weight. R at 21. Yet she stood by the original RFC finding, which relied on a finding of *no* evidence of hip impairment, despite changing the factual finding underlying that conclusion to afford "some" weight to evidence of hip impairment. Moreover, the amended opinion continued to afford "great" weight to Dr. Lorber's opinion, despite making a finding of fact

regarding hip impairment which was directly contrary to Dr. Lorber's observations – which, again, were demonstrably incomplete in the first place.

It is not the Court's place to question the factual findings of the ALJ where they are properly supported, but the inconsistency in the amended opinion and the handling of Exhibit 14F *vis-à-vis* the Dr. Lorber opinion – especially combined with the ALJ's explicit reliance on an opinion which was apparently incomplete in the first place – is an example of a failure to build an adequate logical bridge. *Young*, 362 F.3d at 1002 (the ALJ must build an "accurate and logical bridge from the evidence to his conclusion so that, as a reviewing court, we may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review"). The ALJ changed the foundation of her opinion without changing the conclusion, and did not clearly explain how or why that was possible. Without a glimpse into the reasoning underlying such a shift, the Court cannot assess the validity of the ALJ's conclusions, and a remand for clarification is necessary.

B. Residual Functional Capacity Determination

Luckett argues that ALJ Kelsey erred in making the RFC determination by failing to consider the aforementioned hip pathology. He also argues that ALJ Kelsey made an error of law in concluding that range of motion maneuvers cannot be considered evidence demonstrating functional limitations. Finally, he notes her failure to discuss his use of a cane and whether it was required for his ambulation. The Commissioner responds by arguing that: (1) ALJ Kelsey was reasonable in relying upon Dr. Lorber's expert testimony in concluding that no hip pathology existed; (2) that Luckett exaggerates ALJ Kelsey's handling of the range of motion maneuvers–she merely noted that it was volitional; and (3) that Luckett presents no objective evidence in support of his need to use a cane for ambulation.

"The RFC is an assessment of what work-related activities the claimant can perform despite his limitations." *Young*, 362 F.3d at 1000; *see also* 20 C.F.R. §§ 404.1545(a)(1); 416.1545(a)(1). In evaluating a claimant's RFC, an ALJ is expected to take into consideration all of the relevant evidence, including both medical and non-medical evidence. *See* 20 C.F.R. §§ 404.1545(a)(3); 416.945(a)(3). According to SSA regulations:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p, 1996 WL 374184, at *7. Although an ALJ is not required to discuss every piece of evidence, she must consider all of the evidence that is relevant to the disability determination and provide enough analysis in his decision to permit meaningful judicial review. *Clifford*, 227 F.3d at 870; *Young,* 362 F.3d at 1002. In other words, the ALJ must build an "accurate and logical bridge from the evidence to his conclusion." *Scott*, 297 F.3d at 595 (citation omitted).

As previously discussed, the ALJ's handling of the allegedly "new" evidence of hip impairment does warrant a remand for clarification. But the Court will briefly address the remaining issues to provide additional guidance.

First, Luckett argues that ALJ Kelsey improperly weighed the "range of motion" findings, which, according to Luckett, were "reject[ed] . . . out of hand" by ALJ Kelsey. This is, as the Commissioner argues, an exaggeration of the ALJ's decision. In her analysis of the medical evidence, the ALJ notes that she gives "little weight" to the diagnostic findings reached by the

consultative examiner and the physical therapist. R. at 23. She gave the greatest weight to Dr. Lorber's testimony, who, in answering Luckett's attorney's questions, opined that the range of motion findings were "[t]otally under the control of the patient." R. at 95. The ALJ chose to give Dr. Lorber's opinions greater weight because (1) he had access to more records than the other physicians rendering opinions and (2) he was able to listen to Luckett's testimony R. at 17, 22. ALJ Kelsey's conclusions regarding the range of motions findings, based as they were on a well-supported decision to weigh Dr. Lorber's opinion more heavily, were not deficient. That said, especially given Dr. Lorber's apparent failure to consider evidence of hip pathology in the records submitted to him, the ALJ is encouraged to revisit this issue on remand.

Finally, Luckett argues that ALJ Kelsey erred in her RFC finding because she did not determine with finality whether Luckett requires a cane for ambulation. Luckett's argument is that an ALJ *must* decide between conflicting evidence when such evidence is presented and affects the benefit determination. But here, there was no conflicting evidence. Nowhere in the record, or in the parties' briefs, is there any evidence at all that Luckett *needs* a cane. Luckett's briefs cite to evidence merely noting his *use* of a cane.[2] ALJ Kelsey did not conclude that Luckett does not *use* a cane, rather that he does not *need* it, basing this conclusion on Dr. Lorber's testimony. R. at 22. It is important to remember that an ALJ does not need to make a definitive conclusion about every piece of evidence; an ALJ must consider relevant evidence and provide sufficient analysis to permit judicial review. Here, ALJ Kelsey's discussion of Luckett's use of a cane is sufficient.

In short, aside from the previously-noted issue concerning the handling of Exhibit 14F, none of the RFC issues raised by the claimant require reconsideration on remand.

---

[2] *See* Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security at 15.

C. Credibility Determination

Luckett contends that ALJ Kelsey made a number of reversible errors in assessing the credibility of his testimony. The ALJ's credibility finding reads as follows:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms, however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

R. 19. Luckett first argues that the ALJ's decision, through its boilerplate language, suggests that ALJ Kelsey did not carefully evaluate Luckett's credibility; rather, ALJ Kelsey improperly determined Luckett's RFC first, and then rejected statements at odds with that determination. Luckett further argues that ALJ Kelsey's errors in other parts of her decision–the finding of no hip pathology and her dismissal of the abnormal range of motion findings by the consultative examiner and physical therapist–are improperly used by ALJ Kelsey to discredit Luckett's testimony. Finally, Luckett argues that ALJ Kelsey improperly concluded that he abuses alcohol.

In response to the first of Luckett's arguments, the Commissioner argues that the use of boilerplate language, in and of itself, is not sufficient for a finding of error on the ALJ's part in her assessment of Luckett's credibility. The Commissioner also finds the second argument by Luckett wanting, since he fails to explain how the alleged errors in other parts of the decision affected the credibility determination. The Commissioner points to the great weight given to Dr. Lorber's testimony in regards to Luckett's worsened range of motion to refute the argument that the ALJ first decided Luckett did not have a significantly limited range of motion, then "worked backwards" to discredit Luckett's testimony based on the fact that he said he did. Finally, the Commissioner cites

15

to Dr. Lorber's testimony, who opined that Luckett's polyneuropathy is a possible side effect of alcohol use, as justification for ALJ Kelsey's conclusion of Luckett's alleged alcohol abuse.

An ALJ's credibility finding will be afforded "considerable deference" and will be overturned only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (citations omitted). "A credibility assessment is afforded special deference because the ALJ is in the best position to see and hear the witness and determine credibility." *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000) (citation omitted). However, where the credibility determination is based on objective factors rather than subjective considerations, an ALJ is in no better position than the court and so the court has greater freedom to review it. *Craft*, 539 F.3d at 678. In either case, the ALJ must provide an explanation for his credibility assessment that is sufficient to give the reviewing court a fair sense of how he weighed the claimant's testimony. *Zurawski*, 245 F.3d at 887. As with any other finding, the ALJ's credibility determination must construct a "logical bridge" from the evidence to the conclusion. *See Myles v. Astrue*, 582 F.3d 672, 674 (7th Cir. 2009).

In crafting a credibility determination, the ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

(1) The individual's daily activities;
(2) Location, duration, frequency, and intensity of pain or other symptoms;
(3) Precipitating and aggravating factors;
(4) Type, dosage, effectiveness, and side effects of any medication;
(5) Treatment, other than medication, for relief of pain or other symptoms;
(6) Other measures taken to relieve pain or other symptoms;
(7) Other factors concerning functional limitations due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3). Under SSR 96–7p, the ALJ's determination regarding credibility "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the

weight the adjudicator gave to the individual's statements and the reasons for that weight." 1996 WL 374186, at *2. In this regard, it is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." *Id.* It is also not enough for the adjudicator simply to "recite the factors that are described in the regulations" for evaluating symptoms. *Id.*; *see also Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002).

SSR 96-7p also establishes a two-step process for evaluating symptoms, such as pain. SSR 96-7p, 1996 WL 374186, at *2. First, the ALJ must consider whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce a claimant's pain or other symptoms. *Id.* Second, if there is such an underlying physical or mental impairment, the ALJ must evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which the symptoms limit a claimant's ability to perform basic work activities. *Id.* If a claimant's statements about the intensity, persistence, or functional limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of a claimant's statements based on his consideration of the entire case record. *Id.*

An ALJ cannot discredit a claimant's testimony about her pain and limitations "solely because there is no objective medical evidence supporting it." *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009) (citations omitted). In other words, an ALJ is not permitted to "disbelieve [a claimant's] testimony solely because it seems in excess of the 'objective' medical testimony." *Johnson v. Barnhart*, 449 F.3d 804, 806 (7th Cir. 2006) (citation omitted). SSR 96-7p specifically requires the ALJ to consider "the entire case record, including the objective medical evidence, the

17

individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and other relevant evidence in the case record." *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007) (citation omitted).

To support his argument concerning ALJ Kelsey's use of boilerplate language for the credibility finding, Luckett cites *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012). There, the Seventh Circuit critiqued template language, which unsurprisingly is also used in ALJ Kelsey's decision. But ALJ Kelsey, unlike the ALJ in *Bjornson*, does provide some additional support for her credibility conclusion. She notes the conservative treatment of Luckett's back and the lack of a physician recommending surgery. R. at 22. She also points out the evidence of alcohol abuse in Luckett's file, as well as the lack of any physician opining that he is unable to work at all. *Id.* Thus, ALJ Kelsey's finding is not *per se* insufficient, and most of Luckett's arguments on this issue are unconvincing. But in the paragraph containing the credibility analysis, ALJ Kelsey reiterates that Luckett's medical results showed no hip pathology. *Id.* As explained above, this is inconsistent with her revised decision, which concluded that Luckett's hip arthritis and bursitis constitute severe impairments. Given that ALJ Kelsey's initial and revised decisions use the exact same language, with no changes, to analyze Luckett's credibility, the credibility finding is no longer supported by an adequate and logical bridge. R. at 22. The claimant either has, or does not have, hip pathology. An ALJ cannot conclude that his hip arthritis and bursitis are legally recognizable as severe impairments, while at the same time critique the claimant's credibility because his testimony does not align with what would be expected from an individual with *no* hip pathology. Based on this shortcoming, the ALJ will need to clarify the credibility finding in the amended opinion on remand.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the relief requested in Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 19] and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED

Entered:   August 15, 2013

                                                    /s/ JON E. DEGUILIO
                                           Judge
                                           United States District Court